**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0583n.06**

**No. 08-4561**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 19, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| CINDY R. MCGREW, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: MOORE and ROGERS, Circuit Judges; THAPAR, District Judge.**[*]

 **ROGERS, Circuit Judge.** Cindy R. McGrew appeals the district court's decision affirming

the Commissioner of Social Security's denial of McGrew's application for benefits. McGrew argues

that the Administrative Law Judge erred when he found her not disabled based on a determination

that McGrew's residual functional capacity allows her to perform a significant number of jobs in the

national economy. Because the ALJ properly weighed the relevant medical opinions and because

the decision is supported by substantial evidence, the district court properly upheld the

Commissioner's denial of McGrew's benefits request.

---

 [*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

**I.**

**A. McGrew's injury and medical history**

On February 5, 2002, McGrew fell and injured her back and right wrist while at work. After her work injury, McGrew experienced "chronic pain in her lower back that radiates to her left hip and thigh." McGrew claims that "she also suffers from a host of other medical conditions including cervical degenerative disc disease requiring surgical intervention, chronic fatigue, peripheral neuropathy, fibromyalgia syndrome, tremors, Barrett's esophagus, a history of Epstein-Barr virus since 1994, and depression."

After her work injury, McGrew visited several medical professionals.[1] In mid-2003, Dr. Richard Jones provided McGrew with chiropractic care for a lumbar strain and neuropathy and considered McGrew temporarily disabled from June through October 2003. In July 2003, McGrew visited a neurologist, Dr. Lawrence P. Goldstick. Dr. Goldstick's examination revealed "evidence of a peripheral neuropathy of unclear etiology" and a "slight tremor." Dr. Goldstick noted that McGrew's symptoms may have been related to an Epstein-Barr virus or to fibromyalgia. In July 2005, Dr. Goldstick referred McGrew to Dr. Thomas Henderson who, after examination, diagnosed McGrew with fibromyalgia and a history of chronic fatigue syndrome.

In August 2005, another neurologist, Dr. David Kirschman, examined an earlier MRI and determined that McGrew had a herniated intervertebral disc. Dr. Kirschman recommended surgery,

---

[1]McGrew does not dispute the ALJ's findings with regard to her mental impairments and therefore those examinations are not detailed here.

and McGrew underwent cervical surgery on August 24, 2005. After the surgery, McGrew continued to complain of neck and back pain.

Dr. Goldstick conducted a follow-up examination of McGrew in December 2005. Dr. Goldstick noted that McGrew "has evidence for multiple problems including fibromyalgia, fibrositis, and chronic fatigue syndrome," and that she continued to have a slight tremor. Dr. Goldstick stated, "I feel that the patient is disabled relating to her multiple medical problems." In addition, Dr. Goldstick completed a one-page physical capacities evaluation worksheet. Dr. Goldstick indicated on the worksheet that McGrew could sit for two hours at a time, but only three hours total per eight-hour day; stand or walk only one hour per eight-hour day; and occasionally lift six to ten pounds and occasionally carry up to five pounds.

**B. Administrative process**

McGrew applied for disability insurance benefits on May 9, 2003. Her application was denied initially and on reconsideration. An administrative law judge conducted a hearing on December 12, 2005, at which McGrew testified. On March 13, 2006, the ALJ filed a decision finding that McGrew was not entitled to disability benefits.

In his opinion denying benefits, the ALJ conducted the required five-step sequential analysis for disabilities benefits claims. *See* 20 C.F.R. § 404.1520.[2] At step one, the ALJ found that McGrew

---

[2] The five sequential steps are as follows:

(i) At the first step, we consider your work activity, if any. If you are doing

"has not engaged in substantial gainful activity since February 5, 2002." AR at 28. At step two, the

ALJ found that McGrew had five severe impairments: "(1) peripheral neuropathy of unknown

etiology; (2) recurrent mild tremors; (3) dysthymia; (4) a pain disorder due to physical and

psychological factors; and, (5) since approximately January 1, 2005, cervical degenerative disc

disease." AR at 16, 28. However, the ALJ concluded that McGrew "does not have a severe

impairment relative to her low back." AR at 16. At step three, the ALJ determined that McGrew's

impairments did not meet the criteria of those impairments listed in appendix 1 of 20 C.F.R. § 404,

subpart P, though that conclusion is not fatal to a disability claim.

---

substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 404.1520(a)(4).

Prior to step 4,[3] the ALJ made the following residual functional capacity determination:

> From the alleged disability onset date of February 5, 2002, until January 2005, I find that the claimant lacked the residual functional capacity to: (1) lift more than 25 pounds frequently or 50 pounds occasionally; (2) climb ladders or scaffolds; (3) do any job requiring the constant use of her hands in an outstretched position; (4) work at unprotected heights or around moving machinery; (5) have more than occasional contact with supervisors, coworkers, or members of the public; (6) do other than low stress work activity (i.e., no job involving above average pressure for production, work that is other than routine in nature, or work that is hazardous). Since January 2005 to the date of this decision, the claimant further lacks the residual functional capacity to: (1) lift more than 10 pounds frequently or 20 pounds occasionally; or (2) do any reaching above shoulder level . . . .

AR at 28. In making this determination, the ALJ relied primarily on a November 2003 assessment by Dr. Roy Starkey, a state agency physician. Dr. Starkey's assessment was confirmed in May 2004 by Dr. Maria Congbalay, another state agency physician. The ALJ addressed the contrary conclusions reached by Dr. Goldstick in his physical capacities evaluation worksheet. The ALJ stated that Dr. Goldstick's assessment "is not entitled to controlling or deferential weight because it is not supported by proportionate objective findings and it lacks the necessary supportability and consistency to entitle it to even deferential weight." AR at 24. In addition, the ALJ found that "claimant's subjective allegations are not credible to the extent that they purport to describe a condition of disability within the meaning of the Social Security Act and Regulations." AR at 26.

At step four, the ALJ concluded that McGrew was "unable to perform [her] past relevant work as a general clerk." AR at 26. At step five, based on the residual functional capacity

---

[3] "Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20 C.F.R. § 404.1520(a)(4).

determination made prior to step four, the ALJ found that "there are a significant number of jobs in the national economy which claimant can perform despite her limitations." AR at 27. The ALJ relied on the testimony of a vocational expert who found that, based on McGrew's limitations, there were 23,000 jobs available at the medium exertion level and 24,000 jobs available at the light exertion level. Based on the higher restrictions found after January 2005, the vocational expert reported that there were 18,000 jobs available at the light exertion level and 2,300 jobs available at the sedentary exertion level.

After making this finding at step five, the ALJ concluded that McGrew was not disabled within the meaning of the Act:

> I find that the claimant's residual functional capacity has not been diminished to the extent that claimant is unable to make a vocational adjustment to work that exists in significant numbers in the national economy, and that claimant has not been under a "disability," as defined in the Social Security Act and Regulations, at any time since the alleged onset date through the date of this decision.

AR at 27.

On June 6, 2007, the Appeals Council denied McGrew's request for review, making the ALJ's decision the final decision of the Commissioner.

## C. District Court proceedings

McGrew sought judicial review of the ALJ's decision in federal district court, pursuant to 42 U.S.C. § 405(g). On August 3, 2007, a magistrate judge submitted a report and recommendations

concluding that the decision of the Commissioner should be affirmed. *See McGrew v. Comm'r of Soc. Sec.*, No. 07-285, 2008 WL 4449044, at *2 (S.D. Ohio Sept. 29, 2008).

The magistrate judge found that the ALJ did not err in relying on the residual functional capacity assessments of Drs. Starkey and Congbalay over that of Dr. Goldstick. *Id.* at *7. The magistrate judge found that the ALJ applied the correct legal framework for discounting the opinion of a treating physician. *Id.* The magistrate judge concluded that substantial evidence supports the ALJ's residual functional capacity determination, and that the ALJ properly considered McGrew's diagnoses of an Epstein-Barr virus and chronic fatigue syndrome. *Id.*

On September 29, 2008, the district court adopted the magistrate judge's report and recommendations in full and affirmed the decision of the Commissioner. *Id.* at *1. McGrew timely filed a notice of appeal from this judgment on November 11, 2008.

**II.**

The ALJ applied the correct legal standards in reaching his decision, and substantial evidence supports his findings. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)) (standard of review). The ALJ properly gave diminished weight to the residual functional capacity determination of McGrew's treating physician, and provided "good reasons" to support this conclusion. In addition, substantial evidence supports the ALJ's residual functional capacity determination.

**A.    The ALJ correctly applied the treating physician rule and gave good reasons for discounting Dr. Goldstick's opinion**

The ALJ followed the correct legal procedures when discounting the residual functional capacity determination of Dr. Goldstick, McGrew's treating physician.  The ALJ found that Dr. Goldstick's assessment was not supported by or consistent with the record evidence, and the ALJ provided good reasons to support this conclusion.

McGrew argues that the ALJ should have given "great weight" to Dr. Goldstick's physical capacities evaluation worksheet but failed to do so.  The agency's treating physician regulation requires the ALJ to give controlling weight to opinions from a treating source, such as Dr. Goldstick, if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record."  20 CFR § 404.1527(d)(2).  Even if the ALJ did not afford controlling weight to Dr. Goldstick's opinion, the ALJ could still give some deference to the opinion after evaluating the following factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source . . . ." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing *id.*).

After citing these requirements, the ALJ properly applied the treating physician rule and found that Dr. Goldstick's opinion was not entitled to controlling or deferential weight.  In accordance with § 1527(d)(2), the ALJ gave "good reasons" for the diminished weight given to Dr. Goldstick's opinion:

> [Dr. Goldstick's] assessment of the claimant's residual functional capacity describes a maximum residual functional capacity for significantly less than the full range of sedentary work activity. This assessment is given no significant weight to the extent it purports to be a long term assessment of claimant's physical residual functional capacity. It is not entitled to controlling or deferential weight because it is not supported by proportionate objective findings and it lacks the necessary supportability and consistency to entitle it to even deferential weight. There is no conceivable basis for any restrictions on sitting or standing, let alone for the drastic ones stated on the residual functional capacity form. Such restrictions suggest that claimant is essentially bedridden which she clearly is not. . . . No one has been able to determine the cause of the claimant's neuropathy. Nevertheless, Dr. Goldstick attributed significant work related physical restrictions to the claimant's condition based on very minimal findings, and he has not explained why he feels the claimant would be so restricted by only occasional mild tremors and some diminished sensation in the claimant's extremities following the claimant's successful cervical fusion surgery. . . .
>
> There is no reason why the claimant could not perform light exertional activities with the condition in her cervical spine corrected by a discectomy and fusion. The claimant's condition does not prevent her from standing or walking for up to six hours in a work day. The medical evidence does not establish a valid reason for restricting the claimant to any greater extent, because multiple examinations revealed no deficits in muscle strength in her lower extremities or lumbar spine . . . .

AR at 24-25. These reasons satisfy the requirements of § 1527(d)(2) because the decision "contain[s] specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record," and is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

The ALJ properly applied the treating physician rule and gave good reasons for discounting Dr. Goldstick's residual functional capacity opinion.

**B. Substantial evidence supports the ALJ's residual functional capacity determination**

Substantial evidence supports the ALJ's residual functional capacity determination. The ALJ supported his conclusions with "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citation omitted). The ALJ carefully and thoroughly analyzed the evidence of McGrew's medical examinations and treatments, gave proper weight to state agency physicians, and accommodated changes in McGrew's medical condition.

Contrary to McGrew's arguments, the ALJ considered all relevant evidence in the record through the date of the ALJ's decision. The ALJ's residual functional capacity determination was primarily based on the November 2003 assessment of Dr. Roy Starkey, a state agency physician. Dr. Starkey noted that McGrew "[e]xperienced tingling in her feet and hands, but she had no[] problem with grasp or grip or ambulation. She alleges tremors, yet there was not evidence of tremors at 7/03 exam." Dr. Starkey determined that McGrew could lift or carry 50 pounds occasionally and 25 pounds frequently, could stand or walk about six hours in an eight-hour day, and had limitations relating to climbing. In May 2004, another state agency physician, Dr. Maria Congbalay, reviewed all of the record evidence and agreed with Dr. Starkey's assessment.

Even though Drs. Starkey and Congbalay did not include any restrictions on McGrew's use of her hands—and the ALJ did not witness any hand tremors during the hearing—the ALJ included a restriction on McGrew "doing any job that would require the constant use of her hands in an outstretched position," based on other record evidence of hand tremors. The ALJ placed additional

restrictions on McGrew's residual functional capacity as of January 2005 to accommodate McGrew's diagnosis of cervical degenerative disc disease. As noted above, the ALJ thoroughly analyzed the contrary medical assessments in the record and properly gave those assessments diminished weight.

The evidence described above constitutes substantial evidence supporting the ALJ's residual functional capacity determination. McGrew argues, however, that it was "improper for the ALJ to rely on the state agency reports because they were not based upon the actual physical examination of Ms. McGrew, but rather a cursory review of her then existing medical records." This argument is contrary to agency regulations, which state that "administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled." 20 C.F.R. § 404.1527(f)(2)(i); *see also Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). The ALJ properly considered the opinions of Drs. Starkey and Congbalay.

McGrew also argues that the ALJ improperly relied on the state agency physicians' opinions because they were out of date and did not account for changes in her medical condition. It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after Dr. Starkey's assessment, AR at 14-20, including Dr. Goldstick's contrary assessment, and took into account any relevant changes in McGrew's condition. The ALJ specifically added a restriction on the use of McGrew's hands that was based on examinations conducted before and after the state agency opinions, and the ALJ defined a separate residual functional capacity to take into account the circumstances surrounding McGrew's 2005 surgery.

Finally, to the extent that McGrew briefly argues that the ALJ's decision was not supported by substantial evidence because he did not properly consider her symptoms of Epstein-Barr virus, chronic fatigue syndrome, and fibromyalgia, McGrew's arguments are unavailing. Though McGrew tested positive for the Epstein-Barr virus several years before her work injury, the ALJ noted that "various tests have ruled out the Epstein-Barr and rheumatoid arthritis." AR at 18. The ALJ found that McGrew "does not have chronic fatigue syndrome under the criteria established for such a diagnosis by the Center for Disease Control or SSR 99-2." AR at 18.[4] The ALJ also found that "the suggestion that the claimant may have fibromyalgia is not supported by a formal diagnosis showing the requisite number of trigger points as specified by the American College of Rheumatology for giving such a diagnosis." AR at 18. The ALJ described the formal requirements for a fibromyalgia

---

[4] Social Security Ruling 99-2p states:

> [Chronic Fatigue Syndrome] is a systemic disorder consisting of a complex of symptoms that may vary in incidence, duration, and severity. The current case criteria for CFS, developed by an international group convened by the Centers for Disease Control and Prevention (CDC) as an identification tool and research definition, include a requirement for four or more of a specified list of symptoms. These constitute a patient's complaints as reported to a provider of treatment.
>
> However, the Social Security Act (the Act) and our implementing regulations require that an individual establish disability based on the existence of a medically determinable impairment; i.e., one that can be shown by medical evidence, consisting of medical signs, symptoms and laboratory findings. Disability may not be established on the basis of an individual's statement of symptoms alone.

Soc. Sec. Rul. 99-2p, 1999 WL 271569, at *1 (1999). It was reasonable for the ALJ to conclude that McGrew had not established that she had chronic fatigue syndrome. To the extent that this conclusion rests on McGrew's subjective statements of her symptoms, she has not raised on appeal any arguments relating to the ALJ's adverse credibility determination.

diagnosis and stated that McGrew's treating physicians "relied instead on the claimant's subjective complaints of fatigue and an unspecified number of tenderpoints in the claimant's shoulders and low back." AR at 18. Substantial evidence supports the ALJ's rejection of these three alleged impairments.

## III.

For the foregoing reasons, we affirm the district court judgment upholding the determination of the Commissioner.